## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ADIANÉS FIGUEROA-RIVERA, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Civil No. 24-1357 (ADC)** |
| **COMMONWEALTH OF PUERTO RICO, et al.,** | |
| **Defendants.** | |

## OMNIBUS OPINION AND ORDER

### I.    Introduction

This case centers on a dispute between plaintiffs Adianés Figueroa-Rivera ("Mrs. Figueroa") and José Antonio Ghigliotti ("Mr. Ghigliotti," and together with Mrs. Figueroa, "plaintiffs"), appearing in their personal capacities and on behalf of their minor daughter "ASGF," and the Puerto Rico Department of Education ("DOE") over what constitutes a free and appropriate public education for the ASGF.[1] Plaintiffs have spent years insisting on compliance with what they view as the correct interpretation of their rights as parents under the many substantive and procedural provisions of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. The DOE has made considerable but unsuccessful efforts to

---

[1] Plaintiffs sued the Secretaries of the DOE and the Department of the Family ("DOF") in their official capacities. Because these are instrumentalities of co-defendant the Commonwealth of Puerto Rico ("Commonwealth"), and for simplicity's sake, the Court will refer to the Commonwealth as the main defendant and only refer to the DOE and DOF as necessary.

find an agreeable compromise with plaintiffs. In the process, Mrs. Figueroa became subject to an administrative proceeding before the DOF due to alleged parental negligence arising from ASGF's absences from school. To this day, the parties remain at loggerheads as to how to proceed, with plaintiffs insisting on receiving every inch of process they understand is due to them and the DOE digging in its heels on defense. The main casualty of all this strife has been, and continues to be, the minor ASGF.

Plaintiffs' verified complaint seeks declaratory judgment, injunctive relief, reimbursement of costs, compensatory education, and attorney's fees for alleged violations of IDEA. **ECF No. 1**. Pending before the Court is a motion to dismiss filed by Commonwealth under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. **ECF No. 46**. The Commonwealth argues that plaintiffs failed to exhaust their claims under the administrative procedures available under IDEA, for which reason this Court lacks jurisdiction. Also before the Court is United States Magistrate Judge Giselle López-Soler's Report and Recommendation ("R&R") recommending that the Court deny plaintiff's dual requests for preliminary injunctive relief against the DOE (**ECF No. 5**) and for the issuance of a writ enjoining administrative proceedings against Figueroa -Rivera before the DOF (**ECF No. 11**). **ECF No. 184**.

As to the defendants' motion to dismiss, the matter is fully briefed. Plaintiffs filed an opposition, **ECF No. 60**, and several of the other filings on record relating to the request for preliminary injunction touch upon issues related to defendants' jurisdictional challenge. Both parties filed objections to the Magistrate Judge's R&R on plaintiffs' preliminary injunctive relief

requests. **ECF Nos. 200, 202**. Both parties filed a response to each other's objections. **ECF Nos. 203, 204**. Plaintiffs further filed a reply in support of their objections (**ECF No. 205-1**).

The Court has reviewed the parties' arguments for and against dismissal for lack of jurisdiction, and for the reasons set forth below, the Court **GRANTS IN PART, DENIES IN PART** the Commonwealth's motion to dismiss at **ECF No. 46**. Plaintiffs' first, second, third, fifth, seventh, and eighth causes of action, and their related requests for declaratory and permanent injunctive relief, are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies. All claims against the DOF are **DISMISSED** for lack of jurisdiction, and plaintiffs' request for the issuance of a writ at **ECF No. 11** to enjoin administrative proceedings before that agency is **DENIED**.

The Magistrate Judge's R&R at **ECF No. 184** is **ADOPTED IN PART, MODIFIED IN PART.** The Court adopts the Magistrate Judge's factual findings, as modified in this Opinion and Order. The Court adopts in part the Magistrate Judge's conclusion that the Court lacks subject matter jurisdiction to issue relief that could have been obtained under IDEA's administrative procedure. Accordingly, plaintiffs' motion for preliminary injunctive relief at **ECF No. 5** is **DENIED IN PART**, given that this Court's decision on the motion to dismiss and that other recent developments have rendered the requested relief moot, but **GRANTED IN PART** inasmuch as the Court **ORDERS** the DOE to submit its final IEP proposal for ASGF to the administrative procedure available under IDEA. Plaintiffs' motion for payment of private

school placement at **ECF No. 136** is **DENIED** for failure to exhaust. The Court deems the request

to order a COMPU meeting **MOOT**.

Finally, pursuant to its inherent powers, the Court hereby orders a **STAY** of the present

action pending the outcome of the administrative proceeding ordered herein.

## II.    Factual Background

### A.  The well-pleaded allegations of the verified complaint.

The Magistrate Judge included a succinct and apt summary of the well-pleaded facts of

the verified complaint. *See* R&R, **ECF No. 184** at 1-6. That is no small feat: the factual statement

in plaintiffs' verified complaint exceeds seventy pages in length and goes on for 183 numbered

paragraphs interspersed with legal argumentation and case citations. Plaintiffs often repeat facts

and make references to terms or acronyms that are not defined until later in the complaint. After

a detailed review of the allegations, the Court finds it both useful and efficient to incorporate

the Magistrate Judge's summary of the allegations for purposes of analyzing the

Commonwealth's facial subject-matter jurisdiction challenge. Accordingly, the Magistrate

Judge's summary is incorporated below with some additions and modifications.

#### 1.  ASGF's schooling history up to the 2020-2021 school year.

On August 11, 2024, plaintiffs filed the above-captioned complaint personally and on

behalf of their daughter ASGF, who is registered with the DOE as a student with disabilities.

**ECF No. 1** at ¶¶ 11-12. ASGF has been diagnosed with attention deficit hyperactivity disorder

("ADHD"), inattentive type, learning disorders, depression, anxiety, and syringomyelia. *Id.*, at

¶ 11. She has been duly registered with DOE as a student with disabilities in its Ponce District since 2012. *Id.*, at ¶¶ 12, 24.

In April 2018, plaintiffs paid for a psychometric evaluation of ASGF that showed that she had several specific and significant learning deficiencies in mathematics and in reading and writing Spanish. *Id.*, at ¶ 28. Specifically, the evaluation demonstrated that plaintiff was at a second-grade level in mathematics and a fourth-grade level in Spanish, even though she was currently going through the fifth grade at the time. *Id.* For the school year 2018-2019, ASGF was placed in the public school system to receive full special education services. *Id.*, at ¶ 26. However, the preparation of an Individualized Educational Program ("IEP") for ASGF—the document that sets out the needs and services required for a special education student for each school year—did not begin until January 2019. *Id.*, at ¶ 27.

The IEP for school year 2019-2020 was prepared on May 20, 2019. *Id.*, at ¶ 30. ASGF was placed in a regular classroom with reasonable accommodation but without specific services for her needs. *Id.* Although ASGF obtained good grades, plaintiffs became concerned that ASGF was not learning, but rather merely memorizing material in the short term. *Id.*, at ¶ 31. Plaintiffs took these concerns to the school, which dismissed them given ASGF's good grades. *Id.*

A Programming and Placement Special Education Committee ("COMPU," for its Spanish acronym) meeting took place on October 28, 2020 to review the IEP for the 2020-2021 school

year.[2] *Id.*, at ¶ 32. During that meeting, plaintiffs requested daily, individualized education for ASGF, with a differentiated strategy from that of regular students, in order to address ASGF's academic delays. *Id.*, at ¶ 33. They requested new psych-educative and psychometric evaluations, as well as other evaluations. *Id.* An additional psych-educative evaluation was prepared on December 30, 2020, which was discussed and accepted at an COMPU meeting held on January 26, 2021. *Id.*, at ¶ 34. Plaintiffs requested that the IEP for school year 2020-2021 be amended to take account of this new evaluation. *Id.* Plaintiffs allege that the DOE considered the IEP to be "correct" and that new evaluations would be requested for the upcoming 2021-2022 school year IEP. *Id.* However, in April 2021, during a COMPU meeting, the DOE informed that the 2020-2021 school year IEP would be amended. *Id.* Plaintiffs allege that the draft IEP referenced the December 2020 evaluation but did not include "the recommendations of reduced groups (in number of students) and one-to-one teaching in the areas with learning deficiencies." *Id.*

### 2. IEP for School Year 2021-2022.

In May 2021, meetings between plaintiffs and the representatives of DOE were scheduled to prepare ASGF's IEP for the 2021-2022 school year, but they were not held. **ECF No. 1** at ¶ 36. When the school year began in August 2021, ASGF did not have an approved IEP in place. *Id.* Plaintiffs decided to enroll ASGF in a private school. *Id.* On September 14, 2021, plaintiffs filed

---

[2] Referred to as an "IEP Team" in IDEA. 20 U.S.C. § 1414(d)(1)(B). For simplicity's sake, the Court will use plaintiffs' "COMPU" nomenclature.

an administrative complaint, *A.S.B.F. v. Department of Education*, No. QEE-2122-21-09-00267, seeking payment of education services and placement of ASGF for the 2021-2022 school year. *Id.*, at ¶ 37.[3] The hearing officer agreed with plaintiffs that the DOE had not taken into account the recommendations of the psych-educative evaluation and ordered that ASGF be placed at a private institution at the DOE's expense, and that a COMPU meeting be held before February 2022 to agree on an IEP for the 2021-2022 school year. *Id.*, at ¶¶ 38-42. Although the meeting was held, no IEP for that school year was approved. *Id.*, at ¶ 43.

### 3. IEP for School Year 2022-2023.

An IEP for the 2022-2023 school year was prepared on May 16, 2022. *Id.* Pursuant to the IEP, ASGF attended the María Mercedes (Lila) Mayoral Wirshing School and the Fine Arts School, both public schools in Ponce, Puerto Rico. *Id.*, at ¶ 44. This IEP included transportation services, education assistants, and was later amended to also include a transportation assistant. *Id.* However, on August 13, 2022, the DOE informed plaintiffs that transportation could not be provided. *Id.*, at ¶ 45. On September 11, 2022, plaintiffs filed a complaint in the DOF for institutional negligence against the school director of the Lila Mayoral School, seeking for the DOE to provide transportation to the minor. *Id.*, at ¶¶ 47-48. In what plaintiffs deem "apparent retaliation," the school director filed a complaint with the DOF requesting a protective order on behalf of ASGF against her mother, Mrs. Figueroa, for her failure to take ASGF to school. *Id.*, at

---

[3] As explained in the complaint: "A.S.B.F. corresponds to ASGF due to a change of the legal name because of the culmination of an adoption process by co-plaintiff Mr. José Ghigliotti." **ECF No. 1** at 11 n.1.

¶ 48. On November 17, 2022, the negligence claim against Mrs. Figueroa was dismissed after the parties reached an agreement to resolve the transportation issues. *Id.*, at ¶ 49.

A month later, on December 27, 2022, plaintiffs filed a second administrative complaint before the DOE, *A.F.S.B. v. DOE*, No. 2223-21-12-00809. *Id.*, at ¶ 51. Plaintiffs requested placement, reimbursement of transportation, service assistance, and a COMPU meeting for the minor. *Id.* The claim was settled and, as a result thereof, plaintiffs enrolled ASGF at the Luis Lloréns Torres School in Juana Díaz. *Id.*, at ¶¶ 51-53. ASGF attended the Luis Lloréns Torres School from mid-February 2023 through May 2023. *Id.*, at ¶ 53. ASGF was placed in a regular classroom with a special education teacher to provide one-to-one learning in Spanish, English and mathematics. *Id.*, at ¶ 51.

### 4. Preparation of IEP for School Year 2023-2024.

A COMPU meeting was held on May 31, 2023, at the Luis Lloréns Torres School to prepare ASGF's IEP for the 2023-2024 school year. *Id.*, at ¶ 54. Plaintiffs and representatives of the DOE disagreed on whether a reevaluation of ASGF should be conducted. *Id.* Plaintiffs met with the then-Secretary of DOE, Mr. Eliezer Ramos, on June 28, 2023, and discussed temporary placement in the Lysander Borrero Terry School in Villalba. *Id.*, at ¶ 59. As part of the proposal that was discussed, Mrs. Figueroa, a professional school librarian employed by the DOE, would need to be reassigned to the school. *Id.* Plaintiffs allege that the proposal constituted an agreement from the DOE to provide ASGF a FAPE while an IEP was prepared. *Id.*[4]

---

[4] FAPE stands for "free and appropriate public education" as defined in IDEA. 20 U.S.C. S 1401(9).

Notwithstanding, the proposal was not implemented because, among other things, Mr. Ramos resigned from his position as PR-DOE Secretary on June 30, 2023, and Mrs. Figueroa's transfer request was rejected. *Id.*

Several additional COMPU meetings were held to discuss the results of ASGF's evaluations and a temporary preplacement for her. *Id.*, at ¶ 61. By the time the 2023-2024 school year began, ASGF was not attending school. *Id.* According to plaintiffs, ASGF could not stay at the Luis Lloréns Torres School because, as the school director informed, it did not have the resources to create a small group classroom as ordered by the hearing officer. *Id.*, at ¶ 63. Plaintiffs wanted the minor to attend the Lysander Borrero Terry School, as they had agreed with the then Secretary of DOE. *Id.*

On September 5, 2023, a COMPU meeting was held to discuss evaluations, placement alternatives and transportation, and to draft ASGF's IEP for the 2023-2024 school year. *Id.*, at ¶¶ 78-80. ASGF was not attending school. The DOE now offered ASGF placement at the Lysander Borrero Terry School in Villalba, with a reduced group of eight students, transportation service and transportation assistant, and classes at the Fine Arts School. *Id.*, at ¶ 84. The parties did not reach an agreement on the IEP for that school year but plaintiffs and the DOE continued discussions to prepare the IEP. *Id.*, at ¶¶ 84, 102. Generally, plaintiffs' position was that ASGF's individualized needs, as reflected in the professional evaluations, should be incorporated into the IEP. *Id.*, at ¶ 85. The DOE's position was that ASGF should be placed in tenth grade and afforded reasonable accommodations, and that the regular curriculum should not be impacted.

*Id.*, at ¶¶ 80, 83. The DOE supported its position as responding to "federal and state law requirements" that required IEP goals to be aligned with the corresponding school grade, citing DOE manuals in support. *Id.*, at ¶¶ 83, 86-87.

A COMPU meeting was held on February 8, 2024, in which the transfer to the school in Villalba was discussed. *Id.*, at ¶ 126. On February 20, 2024, the COMPU met to draft the IEP for the 2023-2024 school year. *Id.*, at ¶¶ 127-30. The parties disagreed on the grade placement for ASGF. The parties nonetheless agreed to pre-place the student at the Lysander Borrero Terry School while they exchanged information for the preparation of the 2023-2024 IEP. *Id.*, at ¶¶ 130-132. ASGF would receive one-to-one education from a special education teacher, service assistant, and transportation. *Id.* No IEP was completed for the 2023-2024 school year.

Although transportation services were part of this agreement, they were not provided until a month later, on April 1, 2024. *Id.*, at ¶¶ 133-34. According to plaintiffs, the school's justification was that there was no IEP in place and therefore the "MIPE" platform could not process the application for transportation services. *Id.* All throughout March 2024, Mrs. Figueroa provided transportation to ASGF at the cost of being absent from her job. *Id.*, at ¶ 133.

At some point prior to April 25, 2024, the director of the Luis Lloréns Torres School allegedly "received instructions from the Ponce region to file a complaint against Mrs. Figueroa" in the DOF due to ASGF's absences from school. *Id.*, at ¶ 103. Mrs. Figueroa was informed that the referral was based on "ASGF not attending school." *Id.*, at ¶ 104. On April 25, the referral

"was found to be with basis to continue with the action due to educational negligence." *Id.*, at ¶ 103.

### 5. Preparation of IEP for School Year 2024-2025.

On March 15, 2024, clinical psychologist Dr. José D. Guadalupe sent a letter to the director of the Lysander Borrero Terry School with a series of recommendations. *Id.*, at ¶ 135. In the letter, Dr. Guadalupe describes ASGF's diagnosis of inattentive ADHD and other comorbid conditions. *Id.* He recommended that ASGF be afforded "specific support for difficulties in reading, writing and mathematics, periods of one-to-one classes for academic deficiencies, use of technology, emotional support session with mental health professionals, promotion of an empathetic environment, [and] curricular adaptations in the deficit areas . . . ." *Id.* He also recommended that she be given "transportation and further emotional support in the integration into the school environment." *Id.*

Following Dr. Guadalupe's letter, a COMPU meeting was held on April 23, 2024, to discuss the possibility of changing ASGF's reason for disability to "emotional condition." *Id.*, at ¶ 136. The DOE suggested a one-to-one teacher to work on the areas of academic deficiencies, Spanish, English, and mathematics. *Id.* Plaintiffs urged the DOE to consider the psychoeducational evaluation performed by Dr. Karla Narváez. *Id.* Dr. Narváez had recommended that ASGF be placed in small groups (6-8 students), and that she be assigned a special education teacher to work on the academic subjects in which she had greater deficiencies. *Id.*, at ¶ 137. On May 20, 2024, another COMPU meeting was held in which the parties agreed to

use Dr. Narváez's evaluation, discarding a more recent evaluation performed by another doctor on April 16, 2024. *Id.* The COMPU agreed to meet on June 5, 2024, to draft the IEP for the 2024-2025 school year. *Id.*, at ¶ 138.

On June 5, 2024, the parties met to draft the 2024-2025 IEP. *Id.*, at ¶ 139. Representatives of the DOE informed that they would work on an IEP with goals and objectives to track ASGF's age and corresponding grade level. *Id.* Plaintiffs insisted on the need to consider ASGF's strengths and emotional needs and on a permanent school placement. *Id.* Additionally, they claimed that an assessment for compensatory education was necessary for the minor. No IEP was approved. The main source of disagreement at the time was whether ASGF's IEP would place her in tenth grade with a tenth-grade curriculum, even though her skills in English, Spanish and mathematics did not correspond to those of a student in the tenth grade. At the time of the filing of this case, on August 11, 2024, it was unclear what school ASGF would attend for the 2024-2025 school year and what services she would receive. *Id.*, at ¶ 148. No IEP was drafted and the minor was not attending school. *Id.*

### B. The preliminary injunction record and the R&R.

The same day plaintiffs filed their verified complaint, they also moved for preliminary injunctive relief against the DOE and for the issuance of a writ against the DOF to stay the educational negligence proceedings against Mrs. Figueroa. **ECF Nos. 2, 5**.

Plaintiffs request that the Court order the DOE to provide temporary placement for ASGF in the Lysander Borrero Terry School in Villalba and the Fine Arts school in Ponce with the

provision of specific services while an IEP is prepared. **ECF No. 5** at 10-11. They also request

that the Court order the DOE to hold a COMPU meeting to develop a new IEP plan for ASGF

"considering, and adapted to, the specific needs of ASGF . . . ." and that the Court order DOE to

pay compensatory educational services for at least four years. *Id.*, at 10-12. Also included in the

request are certain requests for permanent relief. *Id.*, at 11-12.[5]

     As to the request for the issuance of a writ, the Court denied it without prejudice early

on, **ECF No. 6**, and plaintiffs refiled their request on August 26, 2025, **ECF No. 11**. On that same

day, the Court referred both the motion for preliminary injunction and the renewed request for

writ to United States Magistrate Judge Giselle López-Soler for a report and recommendation.

**ECF No. 12**. The Magistrate Judge held a status conference on August 30, 2025 and ordered the

parties to meet to try to agree on having ASGF "attend school as soon as possible." **ECF No. 22**.

Because the parties were unable to reach an agreement, the Court set a further status conference

and argumentative hearing for September 18, 2024. **ECF No. 26**. As a result of the Magistrate

Judge's active efforts, the parties managed to agree on a temporary placement for ASGF in the

Lysander Borrero Terry School. **ECF No. 67**.

     The Magistrate Judge held five days of evidentiary hearings on plaintiffs' request for

preliminary injunctive relief and for the issuance of writ, beginning on December 3, 2024. **ECF**

---

[5] The Magistrate Judge correctly determined at the outset of her R&R that these requests for permanent relief should
be denied at this stage. **ECF No. 184** at 5. The Court agrees that this is not the appropriate procedural juncture to
award permanent relief on the merits. Accordingly, the recommended disposition of those requests is adopted
without more.

**No. 97**. That day, the Magistrate Judge heard testimony from Dr. José Guadalupe-Torres, ASGF's clinical psychologist, and Prof. Zulma Ortiz-Burgos, principal of the Lysander Borrero Terry school. *Id.*; Prelim. Inj. Hr'g Tr., Dec. 3, 2024, **ECF No. 170**. On January 13, 2025, Prof. Ortiz-Burgos's examination concluded, and the Magistrate Judge heard from José Luis Santiago-Castillo of the DOE. **ECF No. 127**; Prelim. Inj. Hr'g Tr., Jan. 13, 2025, **ECF No. 171**. The hearings continued the next day, with testimony from Melvin Feliciano-Dávila of the DOE, Mexy Román-Colón of the DOF, and Alexandra Pérez, special education teacher. **ECF No. 128**; Prelim. Inj. Hr'g Tr., Jan. 14, 2025, **ECF No. 172**. On January 17, 2025, a further hearing was held in which the Magistrate Judge heard from Dr. Noelia Cortés-Cordero, associate secretary of the special education program in the DOE. **ECF No. 129**; Prelim. Inj. Hr'g Tr., Jan. 17, 2025, **ECF No. 173**. And finally, on January 31, 2025, plaintiff Adianés Mrs. Figueroa, ASGF's mother, gave testimony. **ECF No. 144**; Prelim. Inj. Hr'g Tr., Jan. 31, 2025, **ECF No. 174**.

After concluding the evidentiary hearings, the Magistrate Judge issued her R&R on March 31, 2025. **ECF No. 184**. There, the Magistrate Judge made forty-three separate findings of fact and found that the Commonwealth had failed to show that plaintiffs did not have a likelihood of success on the merits of their claims. *Id.*, at 7-20. However, the Magistrate Judge found that the specific injunctive relief that plaintiffs requested were remedies that had to be exhausted in administrative proceedings. *Id.*, at 20-23. The Magistrate Judge thus found that plaintiffs' failure to exhaust doomed their request for injunctive relief and recommended that the motion be denied. *Id.* In addition, the Magistrate Judge recommended denying plaintiffs'

motion for writ because the pending negligence proceedings are matters of pure Puerto Rico law on family relations over which there is no identifiable basis for federal jurisdiction, and "more importantly, [because] the resolution of the pending administrative proceeding against Figueroa Rivera will not impact the Court's ability to resolve the claims asserted in the Complaint." *Id.*, at 24-25.

The Court ordered that both parties file objections by May 14, 2025. **ECF No. 193**. The Commonwealth filed a "response" to the R&R, which the Court construes as an objection. **ECF No. 200**. It argued that the Magistrate Judge's conclusion that plaintiffs have a likelihood of success on the merits of their claims is erroneous and reaffirms its request for dismissal for failure to exhaust. On the other hand, plaintiffs filed eighteen separate objections to the R&R. **ECF No. 202**. Their objections range from factual objections as to the Magistrate Judge's findings of fact to substantive objections as to specific legal conclusions which they claim permeate through the Magistrate Judge's reasoning and vitiate the R&R. The Commonwealth responded to plaintiffs' objections and plaintiffs to the Commonwealth's on May 21, 2025. **ECF Nos. 203, 204**. Plaintiffs further filed a reply to the Commonwealth's response on May 26, 2025. **ECF No. 205-1**.

### C. Other matters and disputes.

#### 1. ASGF is temporarily enrolled in private school, for which plaintiffs seek payment.

Aside from the motion to dismiss and the preliminary injunction proceedings, plaintiffs have filed several additional motions. On January 27, 2025, plaintiffs informed the Court that

they had temporarily placed ASGF in a private school while a valid IEP is prepared. **ECF No. 131**. DOE promptly responded on January 29, stating that it was open to reimbursing plaintiffs if they submitted a proposal for academic services. **ECF No. 134**. The next day, plaintiffs filed a motion requesting payment for the private school enrollment "and other related and academic services, such as tutoring and music education previously agreed to by the DOE." **ECF No. 136** at 2. Plaintiffs maintain that payment is required as a matter of law under 20 U.S.C. § 1412(a)(10)(C) rather than under 20 U.S.C. § 1412(a)(10)(B), which is what they construe DOE to be proposing. *Id*. The difference, plaintiffs maintain, is that the first option proceeds when the DOE fails to provide a FAPE and the parents are forced to seek private placement, while the second is applicable when the DOE is the one who "approves and places the student at such institution so that the agency can comply with their obligation." *Id*., at 11. According to plaintiffs, in order to follow DOE's proposed course of action, there must be a valid IEP in place, which implies that the DOE is providing a FAPE through private placement. *Id*. But plaintiffs maintain that this is not correct as a matter of fact or law.

Defendants did not oppose the motion but discussed the possibility of reimbursing plaintiffs during the course of the preliminary injunction hearings. *See* **ECF No. 189** ("The interim remedies requested by Plaintiffs were extensively discussed during several status conferences and throughout the evidentiary hearings before the Magistrate Judge and the undersigned. Defendants provided several alternatives, which included reimbursement for the private school placement, and Plaintiffs outright rejected the offers and requested that the

undersigned conclude the hearings and issue a report on the request for injunctive relief."). However, no agreement was reached. *Cf.* **ECF No. 194** at 6-7 ("Parents are not asking the DOE to consider placing ASGF at Ponce Christian Academy <u>as a favor</u>, that the DOE is willing to consider if the school meets the requirements of 20 U.S.C. § 1412(a)(10)(B) to then pay or reimburse services. Instead, parents are requesting that they be reimbursed **<u>now</u>** for the educational services they are obligated to pay **<u>now</u>**, for the DOE not having provided a FAPE in a timely manner as allowed under 20 U.S.C. 1412(a)(10(C), that does not require the existence of an IEP, nor that the State approve the standards of the private school.").[6]

On August 29, 2025, plaintiffs filed a motion reasserting their request for the issuance of the preliminary injunction, in particular, an order for the DOE to convene a COMPU meeting and finalize an IEP. **ECF No. 219**. On September 10, 2025, the Court held a telephone conference with counsel for both parties and ordered that a COMPU meeting be held as soon as practicable. **ECF No. 222**. The Court also ordered plaintiffs to submit to DOE the documents and information it required earlier in the year to analyze their reimbursement request. *Id.* On September 16, 2025, the Commonwealth informed the Court that the DOE had proposed September 20, October 1, and October 2, 2025 as dates to hold the COMPU meeting in the Special Education Services Center in Ponce, Puerto Rico. **ECF No. 223**. On September 17, 2025, plaintiffs filed a motion

---

[6] Plaintiffs have since withdrawn their request for an order to temporarily place ASGF in the Lysander Borrero Terry School in Villalba given her temporary private school enrollment. **ECF No. 194** at 14 ("The original relief to order an interim placement at the Lysander Borrero School, pending drafting of an IEP is now not necessary and was shown to be unworkable, but its purpose is fulfilled by the parental placement and request for reimbursement.").

stating for the record what look to be objections to the manner in which the COMPU meeting date was being organized. **ECF No. 227**. The Court ordered that the meeting go ahead on October 1, 2025, and that its results be reported to the Court within twenty-four hours of the meeting's conclusion. **ECF No. 237**.[7]

## 2. Judicial review of DOF negligence proceeding.

As mentioned in the verified complaint, Mrs. Figueroa has been subject to a finding of negligence and has been embroiled in an administrative review proceeding before the DOF. *See* ECF No. 1 at ¶ 103. An administrative hearing before the DOF's Adjudicative Board was held on March 28, 2025. **ECF No. 176**. On March 30, 2025, the DOF confirmed the finding of negligence. **ECF No. 207**. Mrs. Figueroa sought reconsideration. **ECF No. 210** at 2. Her request was denied on July 9, 2025. **ECF No. 216**. On July 22, 2025, plaintiffs informed that they would seek judicial review of the administrative decision before the Commonwealth's Court of Appeal. *Id.*, at 2. More recently, plaintiffs informed that the Court of Appeal issued judgment in Mrs.

---

[7] Specifically, the Court ordered as follows:

> The COMPU meeting shall be held on October 1, 2025. The DOE shall present the COMPU members a draft IEP proposal for ASGF, discuss its contents and explain its bases with them, and employ reasonable efforts to address the COMPU members' concerns or suggestions. Plaintiffs are to cooperate fully in this process and to approach it in good faith, without undue or excessive focus on procedural rigidity. The DOE is to inform of the result of the meeting to this Court within twenty-four hours of its conclusion. If there is a real, concrete possibility of consensus, the Court may grant additional time to finalize the IEP. If not, then plaintiffs are to state their reasons for rejecting the proposal in a motion to be filed within twenty-four hours of the DOE's informative motion. Neither motion shall exceed five pages in length.

**ECF No. 237**.

Figueroa's case on September 15, 2025, denying her request for judicial review, and that she has

sought reconsideration of said determination. **ECF Nos. 236**, **238**.

III.    **Standard of Review**

       A.  **Rule 12(b)(1) and Lack of Subject-Matter Jurisdiction.**

       Motions brought under Fed. R. Civ. P. 12(b)(1) are subject to the same standard of review

as Fed. R. Civ. P. 12(b)(6) motions. *Torres v. Bella Vista Hosp., Inc.*, 523 F. Supp. 2d 123, 132 (D.P.R.

2007) (citing *Negrón-Gaztambide v. Hernández-Torres*, 35 F.3d 25, 27 (1st Cir. 1994)). Therefore, in

analyzing the defendants' jurisdictional challenge, the Court must "construe the Complaint

liberally and treat all well-pleaded facts as true, according to the plaintiffs the benefit of all

reasonable inferences." *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) (citation

modified). Nonetheless, the burden remains on plaintiffs, as the "party seeking to invoke the

jurisdiction of a federal court must bear the burden of demonstrating the existence of such

jurisdiction." *Gordo-González v. United States*, 873 F.3d 32, 35 (1st Cir. 2017). Dismissal for lack of

subject-matter jurisdiction "is appropriate only when the facts adumbrated in the plaintiff's

complaint, taken at face value, fail to bring the case within the court's subject-matter

jurisdiction." *Id.*[8]

---

[8] Because defendants' subject-matter jurisdiction challenge is a facial one as opposed to a factual one, the Court's analysis is limited to the well-pleaded allegations of the complaint. *See Torres-Negrón v. J & N Records, LLC*, 504 F.3d 151, 162 (1st Cir. 2007).

### B. Review of Magistrate Judge's R&R.

United States Magistrate Judges are granted authority to make proposed findings and recommendations on a motion for injunctive relief, while the ultimate resolution of the motion remains at the discretion of the presiding judge. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); *accord* L. Civ. R. 72(a)(1). Any party adversely affected by the recommendation issued may file written objections within fourteen (14) days of being served with the report and recommendation. Fed. R. Civ. P. 72(b). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop,* 389 F. Supp. 2d 189, 191–92 (D.P.R. 2005) (citing *United States v. Raddatz,* 447 U.S. 667, 673 (1980)). "The district court need not consider frivolous, conclusive, or general objections." *Rivera–García v. United States,* Civ. No. 06–1004 (PG), 2008 WL 3287236, *1 (D.P.R. Aug. 7, 2008) (citing *Battle v. U.S. Parole Comm'n,* 834 F.2d 419 (5th Cir. 1987)).

To the extent a party's objections are little more than general or conclusory, without specifying to which issues the party is objecting, or where the objections are repetitive of the arguments already made to the magistrate judge, a *de novo* review may be unwarranted. *Id.* "Instead, the report and recommendation is reviewed by the district judge for clear error." *Id.* (citing *Camardo v. Gen. Motors Hourly–Rate Employees Pension Plan,* 806 F. Supp. 380, 382 (W.D.N.Y. 1992) ("It is improper for an objecting party to ... submit[] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the

original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R.")).

In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate-judge." 28 U.S.C. § 636(b)(1); *see also, Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985); *Alamo Rodríguez v. Pfizer Pharma., Inc.*, 286 F. Supp. 2d 144, 146 (D.P.R. 2003). Hence, the court may accept those parts of the report and recommendation to which the party does not object. *See Hernández–Mejías v. General Elec.*, 428 F. Supp. 2d 4, 6 (D.P.R. 2005) (citing *Lacedra v. Donald W. Wyatt Detention Facility*, 334 F. Supp. 2d 114, 125–26 (D.R.I. 2004)). The Court, however, "is not required to make separate findings of fact or issue an opinion setting forth its own reasoning." *United States v. Bach*, 388 F. App'x 2 (1st Cir. 2010) (citing *Jonco, LLC v. ALI, Inc.*, 157 F.3d 33, 35 (1st Cir. 1998)).

## IV.    Discussion

Plaintiffs' verified complaint includes nine causes of action against defendants. As the Magistrate Judge aptly summarized in her R&R:

> All the causes of action are premised on the effect that the policies and practices of the DOE with respect to the process of approving an IEP have had in ASGF's case and how these have impeded the diligent preparation of ASGF's IEP in violation of IDEA. [**ECF No. 1**] at pp. 78-91. As alleged, the causes of action stem from DOE policies and guidelines that (i) violate IDEA's requirement of individualized consideration of a child's needs so that a FAPE may be provided (Count 1); (ii) fail to provide a written prior notice and conduct yearly reevaluations for special education students (Count 2); (iii) prevent parents' meaningful participation in the drafting of the IEP (Count 3); (iv) allow the "automatic continuation of obsolete IEP" (Count 4); (v) fail to account for previous administrative resolutions (Count 5); (vi) transfer the obligation to have a valid IEP to parents (Count 6); and (vii)

allow agreements related to a FAPE to be contained in minutes instead of drafting or amending an IEP (Count 8). Plaintiffs also assert a cause of action for compensatory education services (Count 7) and another for attorney's fees and costs (Count 9).

R&R, **ECF No. 184** at 12-13. The DOF is referenced mainly with regards to the sixth cause of action, in which plaintiffs accuse it of collaborating with DOE to violate IDEA by accepting and processing negligence referrals against plaintiffs for their rejection of DOE's IEP proposals. *See* **ECF No. 1** at ¶¶ 209-10.

In the verified complaint's prayer for relief, plaintiffs ask the Court to issue nine separate and detailed declarations as to the purported illegality of DOE's actions under IDEA which do not neatly track the underlying causes of action. *See id.*, at 85-90. Plaintiffs also request permanent injunctive relief "enjoining defendants from further depriving or seeking to interfere with ASGF's federal rights . . . [and] enjoining the DOE and the [DOF] from pursuing claims for educational negligence against Mrs. Figueroa, or both parents, for not taking ASGF to a school . . . ." *Id.*, at 89-90.

The Court's task at this point is to determine whether the well-pleaded facts in the verified complaint, taken as true, excuse plaintiffs from complying with IDEA's exhaustion of remedies requirement.

### A. IDEA and exhaustion of remedies.

IDEA imposes on states the obligation to provide "all children with disabilities a free and appropriate public education (commonly referred to as a FAPE)" in exchange for federal

funding. *Roe v. Healey*, 78 F.4th 11, 15-16 (1st Cir. 2023) (citing 20 U.S.C. §§ 1400(d)(1)(A), 1412(a)(1)(A)).[9] "A FAPE encompasses both 'special education and related services'" and is provided "primarily . . . through the promulgation of individualized education programs (IEP)." *Id.*, at 16 (citing 20 U.S.C. §§ 1401(9), 1414(d)). A child with disabilities is evaluated and reevaluated in accordance with the requirements and procedures set out in 20 U.S.C. § 1414(a)-(c). An IEP for the child is prepared by an IEP team (*i.e.*, the COMPU) in accordance with 20 U.S.C. § 1414(d), which is required to meet and make decisions as to the preparation of the IEP. The team consists of, at a minimum, the child's parents, one of the child's regular teachers, one special education teacher, and a representative of the state educational agency (here, the DOE) with certain competencies. 20 U.S.C. § 1414(d)(1)(B).

IDEA includes an administrative framework for parents or the public agency to "raise complaints 'with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.'" *Valentín-Marrero v. Puerto Rico*, 29 F.4th 45, 50 (1st Cir. 2022) (quoting 20 U.S.C. § 1415(b)(6)(A)); *see also* 34 C.F.R. § 300.507(a)(1). For instance:

> If the IEP process fails to produce an IEP upon which a school district and the child's parents can agree, the parents may challenge either the school district's handling of the IEP process or the substantive adequacy of the IEP itself—that is, whether the IEP is reasonably calculated to enable the child to make progress in light of their circumstances—by demanding an administrative due process hearing before a designated state educational agency.

---

[9] The Commonwealth is a "State" for purposes of IDEA. 20 U.S.C. § 1401(31).

*Doe v. Newton Pub. Sch.*, 48 F.4th 42, 48 (1st Cir. 2022) (citing *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 35 (1st Cir. 2012) (citation modified)).[10] On the other hand, the local educational agency "has essentially the same right if, for example, it seeks to test the validity of a proposed IEP or it wishes to challenge an existing IEP as over-accommodating." *Esposito*, 675 F.3d at 35.[11]

These "impartial due process hearings" are conducted before a hearing officer in accordance with 20 U.S.C. § 1415(f) and 34 C.F.R. § 300.513 and are "broad" in scope. *Rose v. Yeaw*, 214 F.3d 206, 210 (1st Cir. 2000). The hearing officer's decision "shall be made on substantive grounds based on a determination of whether the child received a [FAPE]." 20 U.S.C. § 1415(f)(3)(E)(i); *see also* 34 C.F.R. § 300.513(a)(1). If the complaint involves allegations of procedural violations, then the hearing officer must consider the effect these had on the child's right to a FAPE, the parents' right to participate in the decision-making process regarding the provision of a FAPE, or on the educational benefits themselves. 20 U.S.C. § 1415(f)(3)(E)(ii), 34 C.F.R. § 300.513(a)(2).

State law or the state educational agency may provide for the hearing to be conducted before a local educational agency or before the state educational agency itself. 20 U.S.C. §

---

[10] A "state educational agency" is defined as "the State board of education or other agency or officer primarily responsible for the State supervision of public elementary schools and secondary schools, or, if there is no such officer or agency, an officer or agency designated by the Governor or by State law." 20 U.S.C.A. § 1401(32).

[11] A "local educational agency" is defined as "a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for such combination of school districts or counties as are recognized in a State as an administrative agency for its public elementary schools or secondary schools." 20 U.S.C. § 1401(19).

1415(f)(1)(A). If before a local educational agency, then the party aggrieved by the outcome has

the right to appeal the decision to the state educational agency. 20 U.S.C. § 1415(g). The decision

of the state educational agency, whether on first instance or on appeal, is reviewable by means

of the filing of a civil action "in any State court of competent jurisdiction or in a district court of

the United States, without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2)(A).

The relief available under IDEA is limited to providing a FAPE where one has been

denied. *See Fry*, 580 U.S. at 166 ("The only relief that an IDEA officer can give . . . is relief for the

denial of a FAPE."); *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S.

359, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985). This relief includes equitable remedies such as

ordering the provision of compensatory education services and the reimbursement of past

educational expenses. *Roe v. Healy*, 78 F.4th at 16; *see also Doucette v. Georgetown Pub. Sch.*, 936

F.3d 16, 32 (1st Cir. 2019) ("[T]the relief available under the IDEA is equitable and is limited to

(1) future special education and related services to ensure or remedy a past denial of a FAPE;

and (2) reimbursements to parents for education-related expenditures that the state ought to

have borne."). Parents may also demand compliance with IDEA's procedural provisions. *See

Fry*, 580 U.S. at 168 n.6 (citing 20 U.S.C. § 1415(f)(3)(E)(iii)); 34 C.F.R. § 300.513(b).

However, "[p]arents must exhaust their state-provided remedies before filing a lawsuit

in federal court alleging a violation of the IDEA." *Roe v. Healey*, 78 F.4th at 16 (citing 20 U.S.C. §

1415(i)(2)(A)); *see also* 20 U.S.C. § 1415(*l*). The First Circuit has long recognized that "special

benefits adhere to the exhaustion requirement in the IDEA context." *Frazier v. Fairhaven Sch.*

*Comm.*, 276 F.3d 52, 60–61 (1st Cir. 2002). It recently emphasized how the statute's "administrative machinery places those with specialized knowledge—education professionals—at the center of the decisionmaking process, entrusting to them the initial evaluation of whether a disabled student is receiving a [FAPE,] . . . also ensur[ing] that educational agencies will have an opportunity to correct shortcomings in a disabled student's [IEP]." *Valentín-Marrero*, 29 F.4th at 51 (quoting *Frazier*, 276 F.3d at 60–61). Moreover, IDEA's exhaustion requirement "also serves the purposes that exhaustion requirements in administrative regimes typically serve, including 'forc[ing] parties to take administrative proceedings seriously, allow[ing] administrative agencies an opportunity to correct their own errors, and potentially avoid[ing] the need for judicial involvement altogether.'" *Id.* (quoting *Frazier*, 276 F.3d at 60 (alterations in original)). Such is the importance of having the administrative procedure run its course that "[p]ermitting parents to bypass [them] in order to have courts determine in the first instance whether an IEP provides a FAPE frustrates the IDEA's 'carefully calibrated balance and shifts the burden of factfinding from the educational specialists to the judiciary.'" *Id.* (quoting *Frazier*, 276 F.2d at 61).[12] In that sense, having a developed administrative record is an invaluable tool in those cases that do reach the courthouse steps.

---

[12] Although plaintiffs here seek no relief under non-IDEA statutes, it bears mentioning that the Supreme Court has firmly held that suits seeking relief available under IDEA must exhaust its administrative remedies framework, even when the relief could also be available under other statutes. *See Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142 (2023); *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154 (2017) (both interpreting 20 U.S.C. § 1415(*l*)). For example, in *Fry*, the Supreme Court held that when the substance or gravamen of a complaint shows that the plaintiff seeks relief from the denial of a FAPE, related claims of disability discrimination under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, need to be exhausted under IDEA's administrative procedures before they could be heard in court. *Fry*, 580 U.S. at 168-69. Later, in *Luna Perez*,

Plaintiffs here undoubtedly seek relief under IDEA—all their causes of action allege that the Commonwealth "violated the IDEA." *See* **ECF No. 1** at ¶¶ 198, 200, 202, 204, 206, 208-10; *see also id.*, at 83 ¶ 2 (misnumbered paragraph in "Eighth Cause of Action"). On substance, all these causes of action entail the DOE's purported failure to provide ASGF with a FAPE and its violation of plaintiffs' substantive and procedural rights under IDEA. Plaintiffs also seek compensatory education services, a type of relief that falls within IDEA. But the rub lies in the way plaintiffs have drafted their claims. As they point out, the claims center on allegations that the DOE has engaged in general practices, some written and some unwritten, that violate IDEA and impede the preparation of an IEP that properly addresses ASGF's individualized needs, ultimately resulting in the denial of a FAPE. They allege that the DOE effectively negated their right to meaningfully participate in the process of preparing the IEP by rejecting their recommendations without a satisfactory explanation.[13]

What is relevant to the Court at this juncture is that plaintiffs argue that they are not required to exhaust administrative remedies based on certain judicially-recognized exceptions.

---

the Court held that a claim for past compensatory damages under the Americans with Disabilities Act did not need to be exhausted because, even though the damages stemmed from the denial of a FAPE, the requested relief or remedy was unavailable under IDEA. *Luna Perez*, 598 U.S. at 146-48.

[13] At bottom, plaintiffs' claims can be distilled down to two principal grievances: (1) that the DOE has not allowed them, in substance and procedure, to meaningfully question the rationale of having ASGF placed in a general curriculum as a starting point for the preparation of her IEP, and (2) that it has abandoned its duty to have an IEP in place at the beginning of each school year by refusing to test the propriety of the IEP in an administrative proceeding given the lack of consensus among the COMPU members (i.e., due to plaintiffs' rejection of the IEP proposals) leaving ASGF at a disadvantage.

### 1. Exceptions to IDEA's exhaustion requirement.

Textually, IDEA's exhaustion requirement does not appear to admit exceptions. However, courts have recognized (based principally on legislative history) that the requirement was not meant to be overly rigid and that, in appropriate cases, courts may excuse plaintiffs from going through the administrative process. *See, e.g., Ezratty v. Com. of Puerto Rico*, 648 F.2d 770, 774 (1st Cir. 1981) ("Indeed, the legislative history of the [predecessor to IDEA, the Education for All Handicapped Children Act of 1975 ("EHA"),] reflects the understanding that exhaustion is not a rigid requirement.").[14] Although the exact contours of these judicially-recognized exceptions have ebbed and flowed throughout the decades, the First Circuit has, broadly speaking, recognized three exceptions to IDEA's exhaustion requirement.

First, if a plaintiff shows that exhausting administrative remedies would be futile, he or she may be allowed to proceed directly to court. Specifically, a plaintiff must make a showing that "the agency's adoption of an unlawful general policy would make resort to the agency futile, or that the administrative remedies afforded by the process are inadequate given the relief sought." *Rose v. Yeaw*, 214 F.3d at 210-11 (citing *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1094 (1st Cir. 1989)). Another variant of the futility exception excuses exhaustion "where the agency has prevented the litigant from pursuing the administrative process." *Id.*, at 211

---

[14] "Congress first passed IDEA as part of the Education of the Handicapped Act in 1970, 84 Stat. 175, and amended it substantially in the Education for All Handicapped Children Act of 1975, 89 Stat. 773." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 51–52 (2005). "The EHA amendments of 1990, P.L. 101–476, renamed the statute as the Individuals with Disabilities Education Act (IDEA)." S. Rep. No. 108-185, at 2 (2003).

(citing *Pihl v. Mass. Dep't of Educ.*, 9 F.3d 184, 790-91 (1st Cir. 1993)). In addition, yet another

variant, sometimes alluded to as an independent exception, recognizes that claims need not be

exhausted when they present only a "pure matter of law as to which specialized administrative

understanding plays little role." *Ezratty*, 648 F.2d at 774; *see also Christopher W.*, 877 F.2d at 1095

(citing *Mrs. W v. Tirozzi*, 832 F.2d 748, 759 (2d Cir. 1987) for examples of such circumstances,

"e.g. whether EHA provides a private right of action or whether other remedies under the EHA

have been exhausted."). Recently, the First Circuit described the futility exception as applying

"when (1) the plaintiff's injuries are not redressable through the administrative process, and (2)

the administrative process would provide negligible benefit to the adjudicating court." *Doucette*,

936 F.3d at 31 (citations modified).[15]

Second, a court "may also exercise discretion [and excuse exhaustion] if exhaustion 'will

not only waste resources but also works severe harm upon a litigant.'" *Id.* An emergency that, if

not acted on, would "adversely affect a child's mental or physical health" may qualify under

this exception. *Id.* (citing *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3rd Cir.

1994)). "The First Circuit Court of Appeals cautions that the exception 'is to be sparingly

invoked,' noting that the Third Circuit Court of Appeals has required plaintiffs to provide 'hard

evidence that the child faces irreversible damage if the relief is not granted.'" *Rivera-Quiñones v.*

---

[15] Evidently, case law does not provide a neat taxonomy of all forms of the futility exception. But the underlying concern is aptly summarized in *Doucette's* two-factor test.

*Dep't of Educ. of Puerto Rico*, 125 F. Supp. 3d 391, 394 (D.P.R. 2015) (quoting *Komninos*, 13 F.3d at 778-79).

Third and finally, although not recognized by the First Circuit, "other circuits have" recognized a so-called "systemic violation" exception to IDEA's exhaustion of remedies requirement. *Roe* v. *Healy*, 78 F.4th at 25. This exception excuses exhaustion when "the alleged violations [are] 'truly systemic . . . in the sense that the IDEA's basic goals are threatened on a systemwide basis.'" *Parent/Pro. Advoc. League v. City of Springfield, Massachusetts*, 934 F.3d 13, 27 (1st Cir. 2019) (quoting *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1305 (9th Cir. 1992)). The exception is most readily applicable when the challenged policy or practice "has the practical effect of denying the plaintiffs a forum for their grievances, . . . such as those that challenge the administrative process itself or the process for identifying children with disabilities . . . ." *Roe v. Healy*, 78 F.4th at 26 (citing *Hoeft*, 967 F.2d at 1304; *Parents/Pro. Advoc. Leage*, 934 F.3d at 27). However, "it is not met every time a plaintiff challenges centralized, uniform policies that affect all students within a school or school district." *Id.*, at 25-26 (quoting *T.R. v. Sch. Dist. of Phila.*, 4 F.4th 179, 192 (3d Cir. 2021)).

## 2. Whether plaintiffs' claims are excused from exhaustion.

Plaintiffs argue that they should be excused from exhausting administrative remedies because, in their telling, the full panoply of exceptions applies to their claims. First, plaintiffs argue that their claims challenge general practices of the DOE that prevented the preparation of a valid IEP for ASGF and that they present purely legal matters that do not require

administrative expertise, for which reasons subjecting them to the administrative process would be futile. **ECF No. 60** at 3, 8, 19; *see also* **ECF No. 1** at ¶ 191 ("The claims presented in the instant case relate to the DOE's establishment of practices and procedures which are contrary to the law, as such no exhaustion is required."). In addition, plaintiffs maintain that they are excused from exhausting remedies because of the risk of imminent and irreparable harm to ASGF from not having a valid IEP in place and to Mrs. Figueroa from being subject to a negligence proceeding before the DOF. **ECF No. 60** at 3, 19-21. Lastly, plaintiffs sometimes characterize their claims as attacking "systemic" or "systematic" problems or practices of the DOE, suggesting that the so-called systemic exception applies. *Id.*, at 19-20.

To put plaintiffs' argument against exhaustion in context, they summarize the following DOE "general" practices as being contrary to IDEA: (i) objecting to plaintiffs' reevaluation request made in May of 2023 and conditioning it on the COMPU's consensus, as per a DOE "Special Education Procedures Manual" (*id.*, at 9-10 (citing **ECF No. 1** at ¶¶ 54, 56)); (ii) making an unsupported offer of placement on August 29, 2023 in the Luis Lloréns Torres School in Juana Díaz (*id.*, at 10 (citing **ECF No. 1** at ¶¶ 61-77)); (iii) holding the position that unspecified "federal and state laws" require that ASGF's 2023-2024 IEP respond to the corresponding academic grade, with the appropriate reasonable accommodations made to address her specific academic deficiencies (*id.*, at 10-12 (citing **ECF No. 1** at ¶¶ 80, 86-101)); (iv) filing a negligence claim before the DOF related to the parents' refusal to accept an IEP proposal (*id.*, at 12-14 (citing **ECF No. 1** at ¶¶102-125)); (v) having a "practice of not preparing IEPs, or pursuing administrative process

to validate their proposal, as a matter of course, which is not supported by any authority or rational whatsoever, and is contrary to the law" (*id.*, at 14 (citing **ECF No. 1** at ¶¶ 49-52)).

As explained above, "[f]utility applies when (1) the plaintiff's injuries are not redressable through the administrative process, and (2) the administrative process would provide negligible benefit to the adjudicating court." *Doucette*, 936 F.3d at 31 (citation modified). Here, plaintiffs' injuries can be reduced to the denial of a FAPE under IDEA—the quintessential injury redressable by the statute's impartial due process hearing mechanism. Nothing in the Court's research suggests that the hearing officer could not order the DOE to comply with plaintiffs' interpretation of IDEA—if it turns out to be correct. Indeed, the hearing officer presiding over the impartial due process hearing must have certain specific qualifications that provide assurances of competence in IDEA, namely that he or she:

> possess knowledge of, and the ability to understand, the provisions of [IDEA], Federal and State regulations pertaining to [IDEA], and legal interpretations of [IDEA] by Federal and State courts; . . . the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice; and . . . the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice.

34 C.F.R. § 300.511(c)(1)(ii-iv). The hearing officer also "must not be an employee of the [state educational agency] or the [local educational agency] that is involved in the education and care of the child; . . . or a person having a personal or professional interest that conflicts with the person's objectivity in the hearing." *Id.*, at § 300.511(c)(1)(i). Coupled with the "broad" scope of relief available in these proceedings, *Rose v. Yeaw*, 214 F.3d at 210, the Court fails to see how a

hearing officer would be impeded from affording plaintiffs most of the relief they seek in their first, second, third, fifth, seventh, eighth, and ninth causes of action. After all, plaintiffs' concerns are cabined to DOE's compliance with the requirements of IDEA. A hearing officer is presumptively competent to weigh their claims of procedural and substantive noncompliance and determine whether DOE's practices are sufficient to afford ASGF an IDEA-compliant IEP and FAPE.

Moreover, adjudicating the merits of plaintiffs' eight substantive causes of action (excluding the contingent ninth claim for attorney's fees and costs incurred in this litigation) involve passing judgment on DOE's implementation of IDEA's provisions in light of an extensive factual record, spanning several years' worth of meetings and disputes. For instance, many of the factual predicates for plaintiffs' claims are allegations of past violations of IDEA that occurred since 2022. Whether DOE's actions comport with IDEA's substantive and procedural mandates requires a mixed factual and legal analysis, regardless of whether they stem from general practices or not. Far from raising "purely legal questions" as plaintiffs maintain, adjudicating these claims will entail the examination of how the COMPU meetings were conducted, the adequacy of the DOE's several proposals, and the substance of plaintiffs' many objections and disagreements. Any court would greatly benefit from a developed administrative record on these questions.

In addition, contrary to plaintiffs' suggestion, the hearing officer presiding over the hearing is not there to blindly accept and implement the DOE's rules and regulations but to

ensure due process and determine whether the DOE's actions are sufficient to provide the child a FAPE under IDEA. Indeed, it stands to reason that in most (if not all) cases, the DOE's actions answer to a general policy crafted to implement IDEA. "IDEA is frequently described as a model of cooperative federalism[:] It leaves to the States the primary responsibility for developing and executing educational programs for handicapped children, but imposes significant requirements to be followed in the discharge of that responsibility." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 52, (2005) (citations modified). If any plaintiff can evade the statute's exhaustion rule simply by dressing up FAPE-denial claims as claims against an agency's general policies, then the "carefully calibrated balance" inherent in the design of IDEA's administrative procedures would be irredeemably upset. *See Valentín-Marrero*, 29 F.4th at 51; *Frazier*, 276 F.2d at 61. It would allow parents to judicially challenge DOE practices without first testing at the administrative level whether those policies actually serve IDEA's purpose of providing a FAPE.

In sum, the Court is not convinced that plaintiffs cannot achieve most, if not all, the relief they seek in an administrative forum. The benefits of an administrative record in this case, moreover, are outweighed by plaintiffs' desire to bypass the exhaustion requirement. For this reason, the Court finds that it would not be futile for plaintiffs to exhaust administrative remedies.[16]

---

[16] While plaintiffs are entitled to insist that the DOE give full effect to their rights and those of ASGF under IDEA, the Court is of the impression that their position borders on being unreasonably rigid. Compromise requires flexibility, and although "it takes two to tango," the undersigned and the Magistrate Judge have both witnessed the consistent failure of attempts to resolve this dispute amicably. *See, e.g.*, R&R, **ECF No. 184** at 6 (Magistrate Judge recounting approximately five failed meetings between plaintiffs and DOE between November 2024 and January

Also, the Court does not find plaintiffs' argument for the application of the irreparable harm or the "systemic violations" exceptions persuasive. Borrowing from the preliminary injunction context, irreparable harm usually means that legal remedies are inadequate. *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 18–19 (1st Cir. 1996). But plaintiffs have available remedies in the form of seeking relief under IDEA, which includes remedies such as ordering compliance with IDEA's substantive and procedural provisions, compensatory services, and reimbursement for past educational expenses. *Roe v. Healy*, 78 F.4th at 16; *see also Pihl*, 9 F.3d at 190-91 (subjecting request for compensatory services to exhaustion requirement). That forum has not been denied to them. That said, the Court is neither deaf nor blind to the specific risks that a teenager such as ASGF faces when her education is disrupted, but the availability of specialized administrative mechanisms under IDEA are adequate to address her needs—and those of her parents in this context. As to the "systemic violations" exception, the First Circuit's recent refusal to recognize it in *Roe v. Healy* cautions against its application. And regardless of its validity, there is scant justification for applying it here. The DOE is not alleged to have deprived plaintiffs of an adjudicative administrative forum, and neither do plaintiffs' claims involve the DOE's process of identifying children with disabilities.[17] The Court will not

---

2025 to agree on a temporary placement for ASGF, but ultimately being "[r]esigned to the fact that the parties were unwilling or unable to reach an agreement . . . ."); **ECF No. 237** (instructing plaintiffs "to cooperate fully in this process and to approach it in good faith, without undue or excessive focus on procedural rigidity.").

[17] On the contrary, it appears to the Court that the DOE has been willing to meet with plaintiffs and develop IEP proposals, but that these proposals are consistently objected to and countered with specific demands by plaintiffs.

go out on a limb to apply an unrecognized exception to a jurisdictional requirement, much less extend it to a novel context.

###### a.  Plaintiffs' fourth and sixth causes of action need not be exhausted.

This all said, plaintiffs' fourth and sixth causes of action do not neatly fit with the above analysis.

The Court recalls that plaintiff's fourth claim charges the DOE with implementing a practice of failing to finalize IEP proposals, maintaining prior "obsolete" IEPs in place, and refusing to submit them to validation through a due process hearing. It is alleged that no IEPs were approved for the 2023-2024 and 2024-2025 school years, and that no IEP is being prepared for this current 2025-2026 school year.[18] Who has the obligation to initiate administrative procedures when no consensus as to an IEP proposal is possible? In this hot-potato scenario, both parties unambiguously have the *right* to initiate said procedures, but it is not so clear who has the *obligation* to do so. The Court agrees with plaintiffs inasmuch as it is not self-evident *under IDEA* that parents have the obligation to seek administrative remedies when faced with what they consider a non-compliant IEP proposal and an intransigent DOE.[19] But plaintiffs' self-serving position that they can avoid exhaustion by arguing that the IEP proposals were

---

[18] The situation has changed after the Court's September 10, 2025 telephone conference with the parties, in which the DOE agreed to hold a COMPU meeting for this purpose. **ECF No. 222**.

[19] Other authorities—such as Commonwealth laws governing the duties parents owe to their children—may operate to compel a certain outcome, such as taking children to school even when they have not agreed to an IEP. That is not something the Court will consider here because, as explained herein, it is a state-law matter that is *sub judice* in the Puerto Rico courts.

somehow null *ab initio* is stretching the bounds of reasonableness. *See*, *e.g.*, **ECF No. 60** at 13-14 ("Under these circumstances <u>no IEP</u> could legally be produced, because the needs of ASGF were not accounted for nor were parents afforded a meaningful participation since their participation was not considered by virtue of the general applicability of practices and procedures that predetermined the services to be provided. Any IEP produced under these circumstances would deny a FAPE."); 17 ("no such IEP were prepared since the proposals presented by the DOE were predetermined proposals based on policies of the DOE, thus, no discussion of the unique needs of ASGF could be had, to allow for any administrative record to be of any use."). Parents have the right to have their claims as to violations of the IEP preparation process heard in an impartial due process hearing, 20 U.S.C. § 1415(b)(6). They were never deprived of such right here.

On the other hand, however, the Court also agrees with plaintiffs that when faced with the parents' consistent rejection of an IEP proposal, and once it is evident that no consensus will be reached by the beginning of the school year, the DOE likely has the obligation *under IDEA* to submit its IEP proposal to the administrative process to obtain a binding resolution as to its compatibility with the statue. IDEA imposes on the DOE the duty to have an IEP in effect at the beginning of the school year. 20 U.S.C. § 1414(d)(2)(A). The DOE likely cannot avoid complying with this obligation by insisting in a consensual process that has evidently gone past the point of futility. IDEA gives the DOE the administrative procedure as a tool to comply with this

obligation, and it stands to reason that DOE should use it when faced with an impending non-compliance with another statutory obligation.[20]

Accordingly, the Court finds that plaintiffs need not exhaust remedies as to their claim that the DOE violated IDEA by not subjecting its IEP proposals to the administrative procedure before the start of the school year. So construed, it would be nonsensical to require plaintiffs to commence an administrative proceeding to determine who has the duty to commence an administrative proceeding. The Court agrees with plaintiffs that doing so would be futile.

As to the sixth cause of action, it charges the DOE with engaging in a practice of referring co-plaintiff Mrs. Figueroa to the DOF for negligence as a result of her refusal to accept an allegedly deficient IEP Plan. While the Court is not oblivious to the fact that the DOE maintains these referrals were required by law, it is not now in a position to weigh the sufficiency or merits of that claim in a Rule 12(b)(1) analysis. Suffice it to say that the claim is not redressable in a due process hearing as it does not involve the provision of a FAPE but rather an independent agency action collateral to an IDEA procedure. Accordingly, the Court finds that it would be futile for plaintiffs to exhaust this claim before an administrative hearing officer under IDEA.

***

---

[20] While this administrative process plays out, IDEA's "stay-put" provision would provide the child with education services. *See* 20 U.S.C. § 1415(j). But this provision implies that an administrative proceeding is underway. The DOE's continuous use of a prior year's IEP without updating and without initiating an administrative procedure is likely not sustainable as an appropriate use of the "stay-put" provision, as the Commonwealth has suggested. *See, e.g.*, **ECF No. 203** at 12-13.

For the reasons stated above, the Court hereby **GRANTS IN PART, DENIES IN PART** the Commonwealth's motion to dismiss at **ECF No. 56**. Accordingly, the motion to dismiss is **GRANTED** as to plaintiffs' first, second, third, fifth, seventh, and eighth causes of action, which are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.[21] On the other hand, the motion to dismiss is **DENIED** as to plaintiffs fourth and sixth causes of action at this time.[22]

### 3. The claims against the DOF must be dismissed.

Finally, even though the Commonwealth asks the Court to apply the exhaustion requirement to the claims against the DOF, the Court strongly doubts that the DOF can even be a proper party to a suit premised on violations of IDEA, whether at the administrative or judicial level. Plaintiffs' theory of liability against the DOF is narrowly limited: in their sixth cause of action, they claim that the DOF "collaborates in the violation of IDEA . . . by accepting and pursuing negligence claims for educational negligence from the DOE, for a child not attending school, without first evaluating if the reason for the absence of placement respond[s] to" DOE's failure to follow IDEA. **ECF No. 1** at ¶ 209. Their only request for relief against the DOF is the issuance of a preliminary and permanent injunction barring it from "pursuing claims for

---

[21] Dismissal premised solely on exhaustion grounds is properly without prejudice. *Rivera-Díaz v. Am. Airlines, Inc.*, 229 F.3d 1133 (1st Cir. 2000).

[22] Plaintiff's request for attorney's fees in its ninth cause of action is dismissed in relation to the dismissed causes of action but maintained as to the surviving ones.

educational negligence against Mrs. Figueroa, or both parents, for not taking ASGF to a school . . . ." *Id.*, at 90.[23]

However, this matter is moot.[24] The administrative proceedings before the DOF concluded on July 22, 2025, as plaintiffs informed. **ECF No. 216**. According to their attorney's representations at the September 10, 2025 telephone conference, the matter has been appealed to the Commonwealth's Court of Appeals by Mrs. Figueroa. More recently, plaintiffs informed the Court that the Commonwealth Court of Appeal issued judgment in Mrs. Figueroa's case, and that she intends to seek reconsideration thereof. **ECF No. 235**. Accordingly, any relief issued by this Court against the DOF would be academic, as the administrative proceeding that was sought to be enjoined has concluded and all that is left is Mrs. Figueroa's judicial review proceeding.

But for the avoidance of doubt, even if the Court were to construe plaintiffs' request as a writ to stay the judicial review proceeding before the Commonwealth Court of Appeals (or the

---

[23] Plaintiffs argue in their objection to the R&R that the DOF could be subject to IDEA under 34 C.F.R. § 300.2(b)(1)(iii), which provides that the federal IDEA regulations apply to "all political subdivisions of the State that are involved in the education of children with disabilities, including . . . [o]ther State agencies and schools (such as Departments of Mental Health and Welfare and State schools for children with deafness with blindness). But as they themselves admit, the DOF is "not providing education itself or paying for it . . . ." **ECF No. 202** at 19. The Court will not stretch the regulation's reach to accommodate plaintiffs' theory.

[24] The mootness doctrine "addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." *Moore v. Harper*, 600 U.S. 1, 14 (2023) (quoting *West Virginia v. EPA*, 597 U.S. 697, 719 (2022)). Mootness implies that "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome, such that it is impossible for the court to grant any effectual relief whatever to a prevailing party." *In re Ruiz*, 83 F.4th 68, 73 (1st Cir. 2023) (quoting *Harris v. Univ. of Mass. Lowell*, 43 F.4th 187, 191-92 (1st Cir. 2022) (cleaned up)). In simple terms, "[s]ometimes, events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it. When that happens, a federal court must dismiss the case as moot." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 240, (2024).

Puerto Rico Supreme Court, if it gets to that), it would find that *Younger v. Harris*, 401 U.S. 37

(1971) compels abstention.

An "abstention" in federal court parlance refers to a situation where a federal court

declines to exercise its jurisdiction over a case or controversy. Abstention is an exception to "the

virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). In *Younger v.

Harris*, the Supreme Court ruled that federal courts may not enjoin ongoing state criminal

proceedings absent exceptional circumstances. This rule has extended to apply to other types of

pending state proceedings, including certain civil and administrative proceedings. *See Ohio C.R.

Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986).

More recently, in *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court

clarified that the *Younger* abstention applies exceptionally and only in three types of cases: "state

criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain

orders that are uniquely in furtherance of the state courts' ability to perform their judicial

functions." 571 U.S. at 73 (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491

U.S. 350, 367-68 (1989)) (internal quotation marks omitted). The Supreme Court went on to

elaborate on these types of cases:

> *Younger* exemplifies one class of cases in which federal-court abstention is
> required: When there is a parallel, pending state criminal proceeding, federal
> courts must refrain from enjoining the state prosecution. This Court has extended
> *Younger* abstention to particular state civil proceedings that are akin to criminal
> prosecutions, see *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482

> (1975), or that implicate a State's interest in enforcing the orders and judgments of
> its courts, see *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1
> (1987).

*Id.*, 571 U.S. at 72–73 (2013); *see also Río Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 69 (1st Cir. 2005) ("*Younger* has been extended to some quasi-criminal (or at least 'coercive') state civil proceedings—and even administrative proceedings—brought by the state as enforcement actions against an individual."); *Maymo-Meléndez v. Álvarez-Ramírez*, 364 F.3d 27, 31 (1st Cir. 2004) ("[T]he *Younger* doctrine has been extended to 'coercive' civil cases involving the state and to comparable state administrative proceedings that are quasi-judicial in character and implicate important state interests.").

In *Sirva Relocation, LLC v. Richie*, 794 F.3d 185 (1st Cir. 2015), a panel of the First Circuit devised a three-step methodology to gauge the appropriateness of abstaining under *Younger*. This methodology essentially asks: (1) whether the state proceeding falls into one of the three types of proceedings identified in *Sprint*; (2) whether the three so-called *Middlesex* factors[25] favor abstention, that is, "when the requested relief would interfere [i] with an ongoing state judicial proceeding; [ii] that implicates an important state interest; and [iii] that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge," *Verizon New England, Inc. v. Rhode Island Dep't of Lab. & Training*, 723 F.3d 113, 116 (1st Cir. 2013) (quoting *Rossi v. Gemma*, 489 F.3d 26, 34 (1st Cir. 2007)); and (3) whether there is any "isthmian" exception that would make abstention inappropriate. *Sirva*, 794 F.3d at 192-93.

---

[25] In reference to *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).

The Court finds that the requirements for abstention are met here. Mrs. Figueroa was subject to a quasi-judicial or "coercive" administrative proceeding in the DOF (now pending review in a court of appeals) "akin to a criminal proceeding." The DOF proceedings concern the Commonwealth's important interests over family relations—an interest that is vital to states and the Commonwealth. *See Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern."); *see also Martínez v. Murillo*, No. 1:25-CV-11667-JEK, 2025 WL 2108907, at *2 (D. Mass. July 28, 2025) (applying *Moore* to satisfy *Middlesex* factors); *Amadi v. Dep't of Child. & Fams.*, 245 F. Supp. 3d 316 (D. Mass. 2017) (same); *H.P. Hood, Inc. v. Comm'r of Agric., Food & Rural Res.*, 764 F. Supp. 662, 667 (D. Me. 1991) ("*Moore* also suggested the 'important state interests' in family relations and the prevention of child abuse as reasons for abstaining under *Younger*."). There is no reason to conclude that IDEA operates to displace state authority over family relations, even when some overlap is inevitable. Ultimately, it does not follow that Mrs. Figueroa has a right to impede the Commonwealth's exercise of jurisdiction over this collateral matter. More to the point, it would be inimical to the federal-state balance to have a federal court issue an injunction and thus interfere with this type of authority—particularly when no federal constitutional right is alleged to be squarely at play.

Plaintiffs also raise an argument as to preemption (*i.e.*, that her defense in the DOF proceedings is based on her claim that DOE violated IDEA), but it is unpersuasive. They argue that the Court is only asked to stay the negligence proceedings and determine if "the parents can ever be negligent for the DOE's own failure to abide by the law, a controversy under IDEA,

so that a referral under Law 57 could proceed." **ECF No. 56** at 8; *see also* **ECF No. 11**. But case law is clear that "an exception to abstention exists where preemption is 'facially conclusive' or 'readily apparent.'" *Verizon New England, Inc.*, 723 F.3d at 116-17 (citation modified). Here, it is far from conclusive or apparent that the Commonwealth's exercise of its jurisdiction over possible child negligence is preempted just because the dispute bears some relation with IDEA. That suggestion would insulate every parent of a special education child engaged in an IDEA proceeding from the Commonwealth's jurisdiction over family relations.[26] And in any case, Mrs. Figueroa was able to raise her IDEA-based defenses in those proceedings and those were addressed by the hearing officer. *See* **ECF No. 210**.

Finally, plaintiffs argue that the DOF proceedings were brought in bad faith or with the purpose of harassing them, making the *Younger* abstention is inapplicable. **ECF No. 56** at 6. It is true that one of the narrow, recognized exceptions to the *Younger* abstention doctrine is that "the state proceeding is motivated by a desire to harass or is conducted in bad faith." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975). But here, even though plaintiffs impute a retaliatory motive to this referral, they themselves aver in their complaint that the referral was ostensibly because ASGF was not attending school. **ECF No. 1** at ¶ 104. Independent of motive, the DOF is not the

---

[26] This line of reasoning tends towards the absurd. One only need imagine a hypothetical scenario in which severe cases of child abuse or negligence go unaddressed by the government because a teacher or school official witnesses worrying conduct in a COMPU meeting. Under plaintiffs' logic, the local or state authorities could not get involved because the information for the abuse or negligence referral comes to light in an IDEA proceeding. While this is an extreme hypothetical example, it serves to illustrate the shortcomings in the logic of applying a preemption exception.

proponent of the referral, but rather the Commonwealth agency tasked with investigating it. To the extent the motive behind the referral is within the Court's jurisdiction under IDEA, only the actions of the DOE are properly at issue. Under these circumstances, it is too far a stretch to negate the application of the *Younger* abstention by transferring the allegedly improper motive of one arm of the Commonwealth to another.

Plaintiffs here seek declaratory and injunctive relief against DOE's practices and the denial of a FAPE. On the other hand, the DOF proceedings seek to determine whether the minor is at risk of harm due to Mrs. Figueroa's failure to take ASGF to school during a certain period of time. That Mrs. Figueroa seeks to place the blame on the DOE's alleged abdication of its duties under IDEA does not operate to displace or subordinate the DOF's administrative proceedings. Accordingly, the Court abstains from adjudicating plaintiffs' claims against the DOF. Those claims are to be **DISMISSED**.[27] Accordingly, for the same reasons, the request for writ at **ECF No. 11** is **DENIED**.[28]

---

[27] The claim that the DOE has engaged in an unlawful practice of referring parents who reject IEP proposals (sixth cause of action), is not affected by this abstention.

[28] The Magistrate Judge found that the Court lacked jurisdiction to entertain claims of negligence against parents. **ECF No. 184** at 24. Accordingly, a stay under the All Writs Act, 28 U.S.C. § 1651(a), would not be "necessary or appropriate" as it would not aid the Court's jurisdiction. *Id.* The Court shares in this conclusion, and moreover, in the Magistrate Judge's determination that "the resolution of the pending administrative proceeding against [Mrs. Figueroa] will not impact the Court's ability to resolve the claims asserted in the complaint," specifically, those against the DOE.

B.  **Plaintiffs' requests for preliminary injunctive relief.**

1.  **Plaintiffs' factual objections (Objections No. 7-18).**

Plaintiffs lodged a total of twelve objections to the Magistrate's Findings of Fact. **ECF No. 202** at 24-27 (objections nos. 7-18). The Court has reviewed the objected findings of fact *de novo* and **OVERRULES** plaintiffs' eighth, tenth, eleventh, twelfth, thirteenth, fourteenth, sixteenth, seventeenth, and eighteenth objections. On the other hand, plaintiffs' seventh, ninth, and fifteenth objections are **SUSTAINED IN PART**. The Magistrate Judge organized some of her findings in narrative order, so that if one reads them consecutively, the earlier facts give context to the later ones. The Court construed plaintiffs' seventh, ninth, and fifteenth objections as seeking to clarify that the Magistrate Judge is at times describing the DOE's procedures and not authoritative pronouncements on what IDEA requires be done in the IEP preparation process. Accordingly, the following findings of fact are modified as follows in <u>underline</u>:

> 5. The COMPU is composed of the school director, special education teacher, a teacher from the regular classroom <u>(such as, in ASGF's case, mathematics or Spanish teachers)</u>, support personnel, and the parents, who can invite whomever they want, such as an intercessor or attorney.

> 9. The <u>DOE's</u> process of preparing an IEP can be described in the following manner: IEP draft, IEP completed, IEP signed, and IEP signed in controversy. The difference between a completed IEP and a signed IEP is the signature. Without the signature, the DOE cannot implement the IEP.

> 10. <u>According to DOE procedures,</u> an IEP is "signed in controversy" when it contains the parties' signatures but there are unresolved matters that need discussion.

> 35. The SAEE-06 is a document prepared by the DOE that <u>purports to</u> serve as a written prior notification of the proposed IEP and the COMPU meeting.

### 2. The parties' legal objections (Objections Nos. 1-6).

Because many of plaintiffs' causes of action will be dismissed for failure to exhaust remedies, their request for injunctive relief suffers largely the same fate. Indeed, the Magistrate Judge determined that all the requested preliminary relief should be denied for failure to exhaust. *See* **ECF No. 184** at 23. The Court agrees, but is moved to differ in some respects, explained below.

First, plaintiffs' request for preliminary injunction originally included a request for temporary placement in the Lysander Borrero Terry school in Villalba. That request has been rendered moot due to ASGF's enrollment in a private school with specific services. However, plaintiffs have essentially substituted this request for one of reimbursement for private placement and services under 20 U.S.C. § 1412(a)(10)(C). *See* **ECF No. 136**. That has been a point of dispute between plaintiffs and DOE because DOE is only willing to reimburse plaintiffs prospectively and under 20 U.S.C. § 1412(a)(10)(B). As plaintiffs explain, those two subsections allow for the DOE to pay for ASGF's private school placement but apply in different scenarios, carrying different implications. To wit, plaintiffs maintain that reimbursement under Section 1412(a)(10)(C) is appropriate because the parents have unilaterally placed ASGF in private school due to the DOE's failure to timely provide a FAPE. On the other hand, reimbursement under Section 1412(a)(10)(B) is appropriate when the state agency places the child in private school as a means of providing a FAPE and complying with their statutory obligation to do so.

The Court will not venture into this thicket. This is a matter that should be exhausted at the administrative level and, thus, over which the Court lacks jurisdiction. The determinative question appears to be whether or not DOE offered ASGF a FAPE during the period in dispute. Plaintiffs can and should pursue this remedy in an administrative proceeding before a hearing officer. However, in the meantime, the Court ordered plaintiffs to submit the required documentation to the DOE for it to consider reimbursement under Section 1412(a)(10)(B) as a temporary measure for plaintiffs to pay for ASGF's current private school enrollment and supporting services. Plaintiffs complied. **ECF No. 238**. Were plaintiffs to receive reimbursement under Section 1412(a)(10)(B), the Court understands that they would not be precluded from seeking a remedy under Section 1412(a)(10)(C) in an administrative proceeding, if it follows as a matter of law. The motion at **ECF No. 136** is **DENIED**.

Second, the Court has already directed DOE to hold a COMPU meeting to draft an IEP Plan for the school year 2025-2026 as a result of a consensual discussion with the parties. **ECF No. 222**. Although plaintiffs raised several anticipatory objections to the meeting, the Court understands that they remain willing to participate in the same. **ECF Nos. 227**. In that sense, their request for the Court to order that a COMPU meeting be held is moot.[29]

---

[29] Plaintiffs' request that the COMPU meeting be conducted as per their specifications, however, is beyond this Court's jurisdiction. That request, as well as any claim of procedural violations, is to be exhausted at the administrative level.

Therefore, because of the dismissal of the bulk of plaintiffs' claims and because intervening developments have rendered the sought after relief moot, it is unnecessary for the Court to engage in an exhaustive review of the parties' objections to the R&R.

What is missing, however, is a measure of determinacy. The Court has maintained jurisdiction over plaintiffs' claim that the DOE fails to comply with IDEA by not having an IEP in place for ASGF by the start of every school year, relying instead on an outdated IEP. Furthermore, plaintiffs have not only shown a likelihood of success on this point, *see Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1058-59 (9th Cir. 2012), but the rest of the preliminary injunction factors also weigh in favor of compelling the DOE to submit its IEP proposal to a due process hearing. It is evident from the record that, after more than two years of failed COMPU meetings and deep-seated differences of opinion between plaintiffs and the DOE, a consensual IEP is unlikely to be achieved. *See* R&R, **ECF No. 184** at 9-12, Findings of Fact Nos. 16-34.[30]

The DOE must nonetheless comply with its statutory obligations to provide ASGF with an IEP at the beginning of the school year. This likely requires of the DOE the exercise of its rights under IDEA to submit its proposed IEP to a hearing officer for validation instead of relying on an obsolete IEP. Both the balance of the equities and the public interest favor this outcome. Moreover, continuing to maintain ASGF in an educational limbo is a form of harm

---

[30] This conclusion is, of course, without prejudice to ongoing efforts to reach an agreement already ordered by the Court. **ECF No. 237**.

that, while not irreparable (since the parents also have the option of commencing administrative procedures), does tilt the balance in favor of granting an injunction.

Therefore, pursuant to its considerable discretion in the fashioning of equitable relief, the Court **ORDERS** the DOE to make use of its due process rights under IDEA and submit its final, proposed IEP for ASGF to a due process hearing. Unless otherwise ordered by the Court and pending the results of the October 1, 2025 COMPU meeting, the DOE shall do so no later than fourteen days after the issuance of this Order and notify the Court of its compliance.

Finally, pursuant to its inherent powers, the Court hereby **STAYS** this case pending the outcome of the administrative proceeding. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay a proceeding before it is part of every court's vested right to manage the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). The Court anticipates that many of plaintiffs' objections to DOE's handling of the IEP process will be heard in this proceeding. A developed administrative record will accrue to the benefit of all parties and the Court, should the matter return after exhaustion.

## V.    Conclusion

Evidently, plaintiffs have all but thrown the kitchen sink at the exhaustion requirement in an attempt to break open the courthouse doors. While they have managed to gain a foothold, they must exhaust the bulk of their claims at the administrative level. However, those that have survived are enough for the Court to order DOE to engage the administrative machinery and obtain an authoritative determination as to whether its IEP proposal provides a FAPE in

accordance with IDEA. While it may seem like a pyrrhic victory, plaintiffs now may fully air their grievances with regard to the IEP process in an impartial due process hearing. The Court strongly encourages the parties to take advantage of the procedural flexibility that administrative processes afford. Both plaintiffs and DOE agree that ASGF is entitled to a FAPE—it is up to them to provide it to her.

Pursuant to the above-stated reasons, the defendants' motion to dismiss at **ECF No. 46** is **GRANTED IN PART, DENIED IN PART**. Plaintiffs' first, second, third, fifth, seventh, and eighth causes of action, and their related requests for declaratory and permanent injunctive relief, are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies. All claims against the DOF are **DISMISSED** for lack of jurisdiction, and plaintiffs' request for the issuance of a writ at **ECF No. 11** to enjoin administrative proceedings before that agency is **DENIED**.

The Magistrate Judge's R&R at **ECF No. 184** is **ADOPTED IN PART, MODIFIED IN PART.** The Court adopts the Magistrate Judge's factual findings, as modified in this Opinion and Order. The Court adopts in part the Magistrate Judge's conclusion that the Court lacks subject matter jurisdiction to issue relief that could have been obtained under IDEA's administrative procedure. Accordingly, plaintiffs' motion for preliminary injunctive relief at **ECF No. 5** is **DENIED IN PART** given this Court's decision on the motion to dismiss many of the plaintiffs' claims and that other recent developments have rendered the requested relief moot, but **GRANTED IN PART** inasmuch as the Court **ORDERS** the DOE to submit its final

IEP proposal for ASGF to the administrative procedure available under IDEA no later than fourteen days after the issuance of this Omnibus Opinion and Order, unless otherwise ordered by the Court and pending the results of the October 1, 2025 COMPU meeting. Plaintiffs' motion for payment of private school placement at **ECF No. 136** is **DENIED** for failure to exhaust. The Court deems the request to order a COMPU meeting **MOOT**.

Finally, pursuant to its inherent powers, the Court hereby orders a **STAY** of the present action pending the outcome of the administrative proceeding ordered herein.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of September, 2025.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**